# IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

APR 1 9 2005

Michael N. Milby, Clerk

| | | |
|---|---|---|
| Edward Christian Bedford, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | NO. H-03-4374 |
| | § | |
| Port of Houston Authority, | § | |
| Port of Houston Authority International | § | |
| Corporation, CAMAC Holdings, Inc., | § | |
| Arthur Andersen L.L.P., | § | |
| Kase Lawal (individually), | § | |
| John Rydlund (individually), and | § | |
| John Horan (individually), | § | JURY TRIAL REQUESTED |
| | § | |
| Defendants. | § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GENE L. LOCKE
SYLVIA MATTHEWS EGNER
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, Texas 77002

David H. Brown
Vinson & Elkins, LLP
2300 First City Tower
Houston, Texas 77002

ATTORNEYS FOR DEFENDANTS
PORT OF HOUSTON AUTHORITY INTERNATIONAL
CORPORATION, JOHN RYDLUND (INDIVIDUALLY),
AND JOHN HORAN (INDIVIDUALLY)

ATTORNEY FOR PORT
OF HOUSTON AUTHORITY

April 19, 2005

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES ................................................................................... iii

A.   PRELIMINARY STATEMENT ................................................................... 1

B.   SUMMARY OF PENDING CLAIMS ......................................................... 2

C.   GROUNDS FOR SUMMARY JUDGMENT ............................................... 2

D.   SUMMARY JUDGMENT EVIDENCE ....................................................... 2

E.   SUMMARY OF FACTS .............................................................................. 3

    1.   Eddie Bedford ................................................................................... 3

    2.   Public Entities ................................................................................... 3

    3.   Individual Defendants ....................................................................... 4

        a.   Kase Lawal ............................................................................ 4

        b.   John Horan ............................................................................ 4

        c.   John Rydlund .......................................................................... 5

    4.   Background of POHA's Interest in Consulting with Other Ports ................. 5

    5.   Plaintiff's "Proposal" ........................................................................ 7

    6.   Plaintiff's Alleged Contract Claim ..................................................... 8

F.   ARGUMENT ............................................................................................ 11

    1.   Because There Is No Policy Or Custom Of POHA Or POHAIC That
        Caused Plaintiff's Alleged Deprivation, Plaintiff Has No Civil Rights
        Violation ........................................................................................... 11

    2.   Plaintiff Has No Federally Protected Property Interest .................... 13

    3.   Bedford Has Not Been Denied Due Process ..................................... 16

    4.   As A Matter of Law, The Federal Claim Against The Individual
        Defendants Fails Because Defendants Have Immunity ...................... 17

    5.   Plaintiff Has No Claim for Breach of Implied Contract Against the
        Individual Defendants ....................................................................... 18

a.   Horan and Rydlund Are Not Parties to the Alleged Contract Between the Port and Plaintiff ....................................................................18

b.   The Individual Defendants Cannot Be Liable for An Implied Contract That Did Not Exist Because There Was No Agreement On Terms .......................................................................................................19

c.   The Individual Defendants Cannot Be Liable for A Contract that Did Not Exist, As a Matter of Law ...............................................................20

6.   There Are No Material Issues Of Fact Regarding Plaintiff's Misappropriation Of Trade Secret Claim ...................................................21

a.   The Proposal is Not a Trade Secret ...............................................22

b.   Not Acquired Through A Breach or Improper Means ....................................23

7.   The Individual Defendants Are Entitled to Summary Judgment on Plaintiff's Claims of Theft of Property/Theft of Services/Theft of Trade Secret ...................................................................................................25

a.   Theft of Property/Trade Secret ...................................................26

b.   Theft of Services ...............................................................28

8.   The Individual Defendants Are Entitled to Summary Judgment on Plaintiff's Negligent Misrepresentation Claim as A Matter of Law ........................30

9.   The Individual Defendants Are Entitled to Summary Judgment on Plaintiff's Fraud Claim as A Matter of Law ...........................................32

G.   CONCLUSION ...............................................................................33

CERTIFICATE OF SERVICE.......................................................................34

HOU 2426813 1

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Creighton*, 483 U.S. 635 (1987) ................................................................. 17

*Bd. of County Comm'rs v. Brown*, 520 U.S. 397 (1997) ........................................ 11, 12, 13

*Bennett v. City of Slidell*, 735 F.2d 861 (5th Cir. 1984) ..................................................... 11

*Braden v. Texas A & M Univ. Sys.*, 636 F.2d 90 (5th Cir. 1981) ...................................... 13

*Brown v. Bryan County, OK*, 219 F.3d 450 (5th Cir. 2000) ........................................ 11, 12

*Cataphote Corp. v. Hudson*, 444 F.2d 1313 (5th Cir. 1971) ............................................. 22

*Cathey v. Guenther*, 47 F.3d 162 (5th Cir. 1995) ............................................................. 16

*Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849 (5th Cir. 2004) .......................... 32

*Hare v. City of Corinth*, 135 F.3d 320 (5th Cir. 1998) ..................................................... 17

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ...................................................................... 17

*Hoffmann-La Roche Inc. v. Yoder*, 950 F. Supp. 1348 (S.D. Ohio 1997) ......................... 27

*Keane v. Fox Television Stations, Inc.*, 297 F. Supp. 2d 921 (S.D. Tex. 2004), *aff'd*, 2005 WL 627973 (5th Cir. Tex. Mar. 17, 2005) ............................................. 20, 21, 24

*Kleck v. Bausch & Lomb, Inc.*, 145 F. Supp. 2d 819, 824 (W.D. Tex. 2000)) .................. 21

*Lawfinders Associates, Inc. v. Legal Research Ctr., Inc.*, 65 F. Supp. 2d 414 (N.D. Tex. 1998) ....................................................................................................... 22

*Lewis v. Bank of America NA*, 343 F.3d 540 (5th Cir. 2003). ( ...................................... 32

*Metallurgical Industrial Inc. v. Fourtek, Inc.*, 790 F.2d 1195 (5th Cir. 1986) ..... 22, 23, 24

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ........................................................ 11

*Mossey v. City of Galveston*, 94 F. Supp. 2d 793 (S.D. Tex. 2000) .................................. 17

*Official Airlines Schedule Information Serv. Inc. v. E. Air Lines, Inc.*, 333 F.2d 672 (5th Cir. 1964) ............................................................................................................. 23

*Parratt v. Taylor*, 451 U.S. 527 (1981) ............................................................................ 16

HOU 2426813 1

*Perry v. Port of Houston Auth.*, 118 F. Supp. 2d 770 (S.D. Tex. 2000), *aff'd,* 31 Fed.Appx. 153 (Table)(5th Cir. 2001) ................................................................. 13, 14

*Phillips v. Frey*, 20 F.3d 623 (5th Cir. 1994) ............................................................ 21, 24

*S & D Maint. Co. v. Goldin*, 844 F.2d 962 (2d Cir. 1988) ................................................ 13

*Smith v. Snap-On Tools Corp.*, 833 F.2d 578 (5th Cir. 1987) ............................................ 23

*TIG Insurance Co. v. Sedgwick James*, 276 F.3d 754 (5th Cir. 2002) .............................. 30

### STATE CASES

*A To Z Rental Ctr. v. Burris*, 714 S.W.2d 433 (Tex. App.—Austin 1986) ...................... 19

*Allied Vista, Inc. v. Holt*, 987 S.W.2d 138 (Tex. App.—Houston [14th Dist.] 1999) ....... 30

*America's Favorite Chicken Co. v. Samaras*, 929 S.W.2d 617 (Tex. App.—San Antonio 1996) ......................................................................................... 15

*Angeles v. Brownsville Valley Reg'l Medical Ctr., Inc.*, 960 S.W.2d 854 ........................ 15

*Atkins v. State*, 667 S.W.2d 540 (Tex.  App.—Dallas 1983) ...................................... 26, 27

*Burch v. Hancock*, 56 S.W.3d 257 (Tex. App.—Tyler 2001) ............................................ 19

*City of Bonham v. Southwest Sanitation, Inc.*, 871 S.W.2d 765 ...................................... 32

*Haws & Garrett General Contractors, Inc. v. Gorbett Brothers Welding Co.*, 480 S.W.2d 607 (Tex. 1972) ........................................................................................ 15

*Hyde Corp. v. Huffines*, 314 S.W.2d 763 (Tex. 1958) ...................................................... 22

*Leonard v. State*, 767 S.W.2d 171 (Tex. App.—Dallas 1988) .......................................... 26

*McGowan v. State*, 938 S.W.2d 732 (Tex. App.—Houston [14th Dist.] 1996) ........... 26, 27

*Richmond Printing v. Port of Houston Authority*, 996 S.W.2d 220 (Tex. App.— Houston [14th Dist.] 1999) ............................................................................... 31

*Schalk v. State*, 823 S.W.2d 633 (Tex. Crim. App. 1991) ................................................ 26

*State v. Ragland Clinic-Hospital*, 159 S.W.2d 105 (Tex. 1942) ...................................... 31

*Weightman v. State*, 975 S.W.2d 621  975 S.W.2d 621 (Tex. Crim. App. 1998) ............. 26

## DOCKETED CASES

*Hopkins v. Merrick*, No. 2:03-CV-0319, 2004 WL 42598, at 1 (N.D. Tex. Jan. 7, 2004)..................................................................................................................... 16

## FEDERAL STATUTES

42 U.S.C. § 1983 ........................................................................................................ 11

## CODES AND STATUTES

TEX. CIV. PRAC. & REM. CODE ANN. §§ 134.001-134.005 (Vernon 1997)...................... 25

TEX. PEN. CODE ANN. § 31.01(6) (Vernon 2003) ............................................................ 29

TEX. PEN. CODE ANN. § 31.04 (Vernon 2003)........................................................... 29, 30

TEX. PEN. CODE ANN. § 31.05(b) (Vernon 2003) ........................................................... 26

TEX. TRANSP. CODE ANN. § 431.101(g) ................................................... 4, 5, 6

TEX. TRANSP. CODE ANN. § 431.101(h) ............................................................. 4

TEX. WATER CODE ANN. §§ 60.401-.414 (Vernon 2004)........................................... 14, 31

TEX. WATER CODE ANN. §§ 60.401-60.414 (Vernon 2004) .............................................. 32

## MISCELLANEOUS

RESTATEMENT OF TORTS § 757 cmt. b (1939)..................................................... 24

RESTATEMENT OF TORTS § 757 cmt. j (1939)..................................................... 23

RESTATEMENT (SECOND) OF AGENCY § 320 (1957)..................................................... 19, 20

## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **Edward Christian Bedford,** | § | |
| | § | |
| **Plaintiff,** | § | |
| v. | § | **NO. H-03-4374** |
| | § | |
| **Port of Houston Authority,** | § | |
| **Port of Houston Authority International** | § | |
| **Corporation, CAMAC Holdings, Inc.,** | § | |
| **Arthur Andersen L.L.P.,** | § | |
| **Kase Lawal (individually),** | § | |
| **John Rydlund (individually), and** | § | |
| **John Horan (individually),** | § | **JURY TRIAL REQUESTED** |
| | § | |
| **Defendants.** | § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, Port of Houston Authority ("POHA"), Port of Houston Authority International Corporation ("POHAIC"), John Horan (Individually) ("Horan"), and John Rydlund (Individually) ("Rydlund") (collectively referred to as "Defendants" or "Movants"), move for summary judgment on all of the claims asserted by Edward Bedford ("Plaintiff" or "Bedford") in his First Amended Complaint ("Am. Complaint") [Docket No. 29].

### A. Preliminary Statement

This is a case about a disappointed potential vendor. Plaintiff wanted to be a consultant for POHA to bring in business from Africa. POHA hired no such consultant. Plaintiff tried to show his potential worth to POHA by (1) suggesting that POHA enter a field that POHA was already making plans to enter; and (2) suggesting that he would bring in African business to POHA, which he never did. Plaintiff asserts a civil rights claim under section 1983, based on his failure to be hired as a consultant, and alleges misappropriation of trade secret and breach of implied contract. The

1

summary judgment evidence shows that there are no genuine issues of material fact.  Defendants ask for summary judgment on all of Plaintiff's claims.

## B.   Summary of Pending Claims

By Order dated March 31, 2005, the Court ruled on Defendants' motions to dismiss. [Docket No. 73].  Based on the Court's ruling, the only claim pending against POHA and POHAIC is Plaintiff's section 1983 claim.  The claims pending against the individual Defendants include the section 1983 claim and the state law claims of misappropriation of trade secrets, theft of trade secrets, theft of property/services, negligent misrepresentation, fraud and deceit, and breach of implied contract.

## C.   Grounds for Summary Judgment

Defendants move for summary judgment on Plaintiff's civil rights claim because there is no official policy or custom that caused Plaintiff's alleged deprivation of a federally protected right and because he does not have a federally protected right that has been denied without due process of law.  Horan and Rydlund also move for summary judgment on the federal claim based on qualified immunity.  On the state law claims, Horan and Rydlund move for summary judgment on the breach of contract claim because they had no contract with Bedford and on the misappropriation of trade secret claim because Bedford had no "trade secret" and Horan and Rydlund misappropriated nothing.

## D.   Summary Judgment Evidence[1]

- Deposition of Edward Bedford (October 7, 2004, October 19, 2004) ("Bedford") (attached as Exhibit 1)

- Plaintiff's Response to Defendant Port of Houston Authority's First Set of Interrogatories ("Plaintiff's Interrogatory Answers") (attached as Exhibit 2)

---

[1]   The deposition of Defendant Kase Lawal is scheduled after the deadline to file dispositive motions.  Movants reserve the right to seek leave of court to supplement the summary judgment evidence following his deposition.

- Deposition of John Horan (March 17, 2005) ("Horan") (attached as Exhibit 3)

- Deposition of John Rydlund (April 7, 2005) ("Rydlund") (attached as Exhibit 4)

- Plaintiff's December 2000 Proposal ("2000 Proposal") (attached as Exhibit 5)

- Affidavit of H. Thomas Kornegay ("Kornegay") (attached as Exhibit 6)

- Affidavit of John Horan with Attachments A and B ("Horan Affidavit") (attached as Exhibit 7).

- Affidavit of Stephen A. Sewell ("Sewell") (attached as Exhibit 8)

### E.    Summary of Facts

**1.    Eddie Bedford**

Plaintiff is a Ghanaian citizen who was educated in England where he studied to become a marine engineer.[2]  Exhibit 1 (Bedford) at 7.  He came to the United States in 1999.  *Id.* at 8. Bedford is self-employed as a consultant and a ship engineer.  *Id.* at 44-45.  Bedford's business involves airport and port consulting.  *Id.* at 25.  He operates his business out of his home.  *Id.* at 52. Since establishing his company, he has not had any airport consulting contracts.  *Id.* at 28.  In fact, his company has not made any money since being established and survives on borrowed money.  *Id.* at 55.  Bedford has never been employed by a port or a port authority or had responsibility for operating a port.  *Id.* at 48.  Bedford's company does not compete with POHA or POHAIC.  *Id.* at 57.

**2.    Public Entities**

POHA is a navigation district created by the Texas Legislature under Article XVI, section 59 of the Texas Constitution.  POHA is governed by a seven-member appointed commission. Exhibit 6 (Kornegay) at 1.  Defendant Kase Lawal ("Lawal") is one of the seven commissioners appointed to POHA's commission.  *Id.*  Navigation districts, like POHA, were given the authority to

---

[2]       A ship engineer maintains the engine and engine room of a ship or vessel.  *Id.* (Bedford) at 11.

create local government corporations by the Texas Legislature in the 2001 legislative session. *See* TEX. TRANSP. CODE ANN. § 431.101(g), (h) (Vernon Supp. 2004).

POHAIC, a local government corporation, was organized in January 2002 to aid, assist, and act on behalf of POHA for the purpose of fostering POHA's economic development by providing consulting services to international port authorities, private businesses, and other authorized purposes. Exhibit 6 (Kornegay) at 3. POHAIC has a seven-person board of directors whose members are appointed by POHA. All powers of POHAIC are vested in its board of directors. *Id.* Since its formation, the seven directors of POHAIC have been the seven POHA commissioners. *Id.*

### 3.    Individual Defendants

#### a.    Kase Lawal

Lawal is a POHA commissioner and a director on POHAIC's board. Exhibit 6 (Kornegay) at 1. He was first appointed to the POHA commission in June 1999. He was named Vice-Chairman of the commission after Jim Edmonds was appointed and became Chairman of the commission in June 2000. Vice-Chairman Lawal was reappointed to the POHA commission in June 2003. His current term expires in June 2006. In addition to his community service, he is president of CAMAC Holdings, Inc.,[3] a company that engages in oil and gas exploration, consulting, and engineering.

#### b.    John Horan

Horan has been employed by POHA for 25 years. He is currently the Director of the Trade Development Division of POHA. Exhibit 3 (Horan) at 13. Within the Trade Development Division, there are three departments: trade development, market development, and foreign trade zone. When the idea of POHA establishing a consulting business re-emerged in 1999, Horan was

---

[3]    By Order dated March 31, 2005, the Court dismissed all claims against CAMAC Holdings, Inc.

asked to coordinate the effort. Exhibit 3 (Horan) at 44, 113.  He was later the staff member for POHA's Emerging Market Task Force and developed a business plan for POHA's initial consulting group, which operated under the working name of "POHA Advisory Group."  After POHAIC was established in January 2002, he was designated as an officer of the corporation.

           c.     <u>John Rydlund</u>

Rydlund is the Director of Business Development of POHAIC.  He began working for POHA in May 1990 and was appointed to a position with POHAIC in July 2002.  Exhibit 4 (Rydlund) at 25-26.  Immediately prior to his position with POHAIC, he was a manager for steel projects and worked in the Trade Development Division. *Id.* at 33-34.

**4.     Background of POHA's Interest in Consulting with Other Ports**

The idea of an established port authority entering the port development business was not born at POHA.  Other international ports have been consulting on a fee basis for decades.  Furthermore, POHA was considering the idea long before Bedford ever met anyone at POHA.

According to Horan, in the mid-80s, POHA considered using its staff and its internal expertise to consult with foreign ports. Exhibit 3 (Horan) at 10.  The idea did not mature at that time and was again discussed in the 90s.  Exhibit 6 (Kornegay) at 2.  After Kase Lawal was appointed to the POHA commission in 1999, the idea was renewed. Exhibit 3 (Horan) at 10.  Horan was asked to consider various aspects of such a venture.  By December 1999, Horan wrote a memo to POHA's general counsel asking for advice on the legality and logistics of establishing a consulting-for-a-fee business. *Id.* at 19-20, 53-54, Depo. Ex. 3.  At that point in the discussions, the precursor to POHAIC was known as the Port Advisory Group.  According to Horan's memo, the purpose of the consulting business was twofold: 1) POHA wanted to create another revenue stream; and 2) POHA viewed consulting as a way to further increase cargo and ships using POHA. Exhibit 3 (Horan) at 55.

In February 2000, Horan provided a memo to his supervisor on the subject of development of a consulting group within POHA.  Exhibit 3 (Horan) at 20.  *See* Exhibit 7 (Horan Affidavit) Attachment A.  In this memo, Horan provided details regarding the development of a consulting group within POHA.  Specifically, he explained that POHA would be the project leader or a team member of the project leader on consulting projects.  *Id*.  He explained that the primary purpose of the activity was to make money to be used to fund POHA's activities.  *Id*.  He also attempted to identify other ports that would be possible users of POHA's services.  *Id*.

In June 2000, Jim Edmonds became chairman of the POHA commission and he immediately created task forces and committees to consider various issues, including the concept of port consulting (the task force was known as the Emerging Market Task Force).  Exhibit 3 (Horan) at 12, 15.  Ultimately, it was determined that POHA needed to create a local government corporation to enter successfully into the consulting business.   For POHA to create a local government corporation, a change in Texas law was necessary.  By September 2000, POHA was undertaking, along with other local ports, legislative efforts to have the necessary bills drafted and filed for the upcoming Texas legislative session.  Exhibit 3 (Horan) at 22, 23, Depo. Ex. 1; Exhibit 6 (Kornegay) at 3.  As part of Horan's efforts to help establish a consulting group within the Port of Houston Authority, he also prepared a business plan.  The business plan was forwarded to the members of the Emerging Market Task Force with a memo dated November 6, 2000.  Exhibit 7 (Horan Affidavit) Attachment 2.  In the business plan, Horan commented that the long-term goal was to have the consulting effort "become a full department level revenue producing strategic business unit."  *Id.*

Even when POHA established its consulting business, the idea of an established port authority consulting for a fee was not new.  The Port of Singapore Authority had provided services

to other ports for many years.  Exhibit 8 (Sewell) at 6; Exhibit 6 (Kornegay) at 2.  Likewise, prior to

1999, the Port of Rotterdam offered its services to developing ports for a fee.  Exhibit 8 (Sewell) at

2.  The Port Authority of New York and New Jersey had similarly offered its services for a fee in a

variety of areas.  Exhibit 8 (Sewell) at 2; Exhibit 6 (Kornegay) at 2.  Moreover, by 1997, the Port of

Seattle had begun a marketing initiative to offer consulting services to ports in developing countries

for a fee.  Exhibit 8 (Sewell) at 2.

     **5.**     **Plaintiff's "Proposal"**

In December 2000, Bedford presented a written document to Horan and Rydlund entitled

"Proposal for Inter Port Relationship Between Port of Houston Authority and African Ports:  A

Twinning Relation Beyond the Harbor Gates." *See* Exhibit 5.  Bedford gave copies of the Proposal

to various individuals, including City Council members of the City of Houston, City of Houston

staff persons, various individuals affiliated with POHA, and various people overseas.  Exhibit 2

(interrogatory answers) at 7-8; Exhibit 1 (Bedford) at 112-114.  He shared his proposal broadly

because he wanted to see his idea developed "if there was a reward." *Id* at 115.  The Proposal did

not state that it was confidential on its face, and did not suggest that it was confidential in its body.

*Id.* at 102-03.  Bedford made no attempt to keep it confidential.  In fact in one of his transmittal

letters, he asked the recipient to try to influence the program "on any platform" the recipient might

find herself "during the course of business." *Id.* at 121-22, Depo. Ex. 4.

The Proposal is a 9-page document with two newspaper articles attached.  In his own words,

Bedford's Proposal provided "a strategy as to how we will go to the world and develop the ports of

undeveloped countries … for a fee." Exhibit 1 (Bedford) at 86-87.  One of the newspaper articles

attached is from *The Houston Chronicle*, October 20, 2000. Exhibit 5 (2000 Proposal) at 10.  The

article discussed POHA's interest in offering consulting services and explained that after being

named to chair the commission, James Edmonds created an "emerging market task force to offer the Port's expertise to smaller, less developed ports in other countries." *Id.*

Notwithstanding the article that he attached to his Proposal, Bedford believes that he was the first person ever to suggest that an established port can assist a port of a developing country. Bedford has never used the information from his Proposal in his own business, and the information is not valuable to him in operating his business. Exhibit 1 (Bedford) at 93-94.

Horan did not review Bedford's 2000 Proposal. Instead, he gave it to Rydlund and asked him to review it. Exhibit 3 (Horan) at 26. Rydlund reviewed the document and understood that Bedford wanted to do business with the Port of Houston by using his contacts in Africa to increase cargo through the Port of Houston, or by bringing developing ports to the Port of Houston for consulting work. Exhibit 4 (Rydlund) at 128, 162-63, 166-67. Rydlund never understood that Bedford was bringing the theory of port development for a fee to POHA. *Id.* at 162, 166-67.

### 6.    Plaintiff's Alleged Contract Claim

As part of its efforts to develop trade and other business, POHA regularly invites and hosts officials from other port authorities to tour and meet at POHA.[4] POHA also visits other countries on trade mission trips. Exhibit 4 (Rydlund) at 63. Additionally, officials from other ports often contact POHA and request a meeting. It was in the context of arranging a visit by officials from the Gambia Port Authority in the Gambia, West Africa that Plaintiff first met with Horan and Rydlund in approximately late July 2000. *Id.* at 29-30.

By this time, POHA already had its wheels in motion to create an entity that could offer POHA's expertise to others on a consulting basis. In December 1999, Horan had already reached such a stage in the discussion and planning that he had written a memo to the general counsel

---

[4]    As a way to increase cargo through POHA, POHA will invite delegates to tour POHA and show delegates what POHA does. Exhibit 4 (Rydlund) at 34.

8

requesting advice on the logistics of establishing a consulting group. *See* Exhibit 3 (Horan) at 19-20, 53-54, Depo. Ex. 3. He had also reported to his supervisor on the project. Exhibit 7 (Horan Affidavit) Attachment A. The Executive Director of POHA had also discussed this matter internally and Commissioner Edmonds had already established the Emerging Market Task Force to further POHA's goal of consulting with other ports.

In October 2000, representatives from the Gambia Port Authority visited POHA. Around the same time, representatives from the Ivory Coast and Ghana Port Authority accepted an invitation from Horan and visited POHA. Exhibit 4 (Rydlund) at 30. During the October visits, Bedford claims that Horan and Rydlund suggested that he submit a proposal. Bedford submitted his Proposal to POHA in December 2000. He claims that he did so with the explicit understanding that he would receive a marketing consultant position. Exhibit 1 (Bedford) at 80-81.

Contracts for services with POHA, in excess of $25,000, are made by the Port Commission in an open meeting. Exhibit 6 (Kornegay) at 3. Horan and Rydlund do not have authority to make such decisions. *Id.* Further, a single commissioner, like Lawal, does not have the authority either. *Id.* Since its inception, POHAIC has voted on contracts in open meeting. *Id.* Neither POHA nor POHAIC has voted on any contracts with Bedford nor considered any other issue involving Bedford. *Id.*

In approximately June 2001, Plaintiff submitted a proposed consultancy contract to Lawal ("Draft Agreement"). *See* Exhibit 1 (Bedford) at 193-98, Depo. Ex. 6. This was a draft for Lawal to review and work on, with the "intention of further discussion somewhere along the line if everything goes well." Exhibit 1 (Bedford) at 198. The Draft Agreement was never signed by Lawal or anyone else on behalf of POHA. Bedford admitted that for his agreement to be "effective and binding on POHA, it had to be signed by an authorized person." *Id.* at 197. The terms listed in

the Draft Agreement do not match those that Bedford claims that he negotiated. *See id,* Depo. Ex. 6.

Bedford has been unable to articulate the precise terms that the parties allegedly agreed on. He claims that if his "idea" was a success, he would get a royalty, but the amount was never discussed. Exhibit 1 (Bedford) at 234. Second, he claims he was supposed to receive a fee of 10% of whatever contracts he brought to POHAIC, but there was no agreement on whether the calculation would be pre- or post-expenses. His third alleged agreement was that if he traveled with POHAIC officials, he would get some additional amount of money, but the additional amount was not agreed on. *Id.*

In the summer of 2002, Bedford and Lawal had a meeting. After the meeting, Plaintiff sent Lawal an e-mail explaining that some events that he thought were to take place had not taken place. Specifically, according to Bedford, when he tried to present a contract to Horan, it was apparent that Horan had not received an instruction from Lawal to accept his contract or any contract from any aspiring marketing consultant. Exhibit 1 (Bedford) at 281, 449. In the August 25, 2002 e-mail, Bedford asked Lawal to "clarify my position with regards to the marketing/consultant contract. …" *Id.* Lawal responded with an e-mail of his own. *Id.* at 220. Lawal stated that Bedford appeared to have misunderstood his role and that he had not been directed to give Bedford a contract and had not directed anyone to accept a contract from Bedford. *Id.* 220-21. Lawal's e-mail pointed out that established procedures exist for contracting with POHA. *Id.* Bedford testified that the tone of the e-mail created an impression that Bedford was trying to bribe Lawal. *Id.* at 454-55. Lawal's e-mail embarrassed Bedford. *Id.* at 222. This lawsuit followed.

10

## F.   Argument

**1.    Because There Is No Policy Or Custom Of POHA Or POHAIC That Caused Plaintiff's Alleged Deprivation, Plaintiff Has No Civil Rights Violation**

A governmental unit, such as POHA or POHAIC, can be sued and subjected to monetary damages and injunctive relief under 42 U.S.C. § 1983 only if its official policy or custom causes the deprivation of a federally protected right. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A governmental entity cannot be liable for civil rights violations under a theory of *respondeat superior* or vicarious liability. *Monell*, 436 U.S. at 691-92.

To establish the liability of a municipality or other local government unit, a plaintiff must show (1) a decision by a decision maker that amounts to a policy;[5] (2) a decision so deliberately indifferent to the rights of the citizens that the governmental unit can be said to be culpable for the injury; and (3) sufficient causation between the specific policy decision and the resulting constitutional injury. *Brown v. Bryan County, OK*, 219 F.3d 450, 457 (5th Cir. 2000). "An official policy, for purposes of § 1983 liability, is '[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the [governmental unit's] ... lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority.'" *Id. (quoting Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc)). For section 1983 liability, an official policy may also include a common and well settled custom that represents governmental policy. *Id.* The culpability element requires that the decision-making body or the authorized decision maker intentionally deprived a plaintiff of a federally protected right. *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997). "A showing of simple or even heightened negligence will not suffice." *Id.* at 407.

---

5   Requiring the identification of a policy ensures that a governmental unit "is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the [governmental unit]." *Bd. of County Comm'rs v Brown*, 520 U.S. 397, 403-04 (1997).

11

Plaintiff cannot meet the requirements of this claim. Plaintiff alleges that POHA or POHAIC violated his constitutional rights by failing to abide by a mutually explicit understanding regarding Plaintiff receiving a contract to be a marketing consultant. However, Plaintiff cannot point to any policy or custom by POHA or POHAIC that secured his interest in employment or that created any legitimate claim to it. Further, Plaintiff can point to no POHA or POHAIC policy related to his alleged deprivation. Further, absent a policy or custom, Plaintiff cannot show either that POHA or POHAIC were indifferent to his rights to be culpable for his injury. Moreover, absent a policy or custom, Plaintiff cannot show causation.

POHA and POHAIC assert that Plaintiff was never hired as a marketing consultant and was never promised a marketing consultant contract with POHAIC. Nonetheless, for summary judgment purposes, Movants submit evidence that there was no policy or custom related to Plaintiff.

According to the Executive Director of POHA, who also serves as President of POHAIC, before POHAIC or POHA would have hired or contracted with Plaintiff, the policy and custom of POHA and POHAIC would have required the POHA commission or POHAIC's board of directors to meet and deliberate on the issue. Exhibit 6 (Kornegay) at 3. The decision to enter into a contract for services to POHA, if over $25,000, is made by the Port Commission in an open meeting with a vote of the full commission. *Id.* No single commissioner or staff person has authority to enter into a contract to bind POHA in excess of $25,000. *Id.* Contracting decisions for POHAIC are made by the full Board of Directors of POHAIC in an open meeting. Kornegay testified that neither POHA nor POHAIC has ever voted on any contracts with Bedford nor any other issue involving Bedford. *Id.* In short, the board of directors of POHAIC never discussed Bedford; the Port Commission of POHA never discussed Bedford. Therefore, Plaintiff's section 1983 claim against POHA and POHAIC should be dismissed.

12

## 2.    Plaintiff Has No Federally Protected Property Interest

Bedford appears to allege deprivation of property without due process of law in violation of the Fourteenth Amendment.  Not every alleged breach of contract or quasi-contractual obligation by a governmental official, however, gives rise to a constitutional claim.[6]  There are two ways to avoid such a result:   1) limit the interests that rise to the level of a protected interest, or 2) hold that providing post-deprivation remedies is all the process that is due.  Bedford loses on both counts.

Bedford complains that he had a binding agreement with POHA based on a "mutually explicit understanding."  Am. Complaint at 7.  A mutually explicit understanding that is contrary to Texas law, however, cannot create a property interest under section 1983.  *Perry v. Port of Houston Auth.,* 118 F. Supp. 2d 770, 774 (S.D. Tex. 2000), *aff'd,* 31 Fed.Appx. 153 (Table)(5th Cir. 2001).  In *Perry,* the plaintiff was the lowest bidder in response to an invitation to bid issued by POHA.  POHA ultimately awarded the contract to another bidder.  *Id.* at 771.  Perry brought a section 1983 claim based on deprivation of property protected by the Due Process Clause of the Fourteenth Amendment.

In that case, Perry asserted that "several 'mutually explicit understandings' formed the basis of his property interest."  118 F. Supp. 2d at 773.  Specifically, he alleged that the understandings were based on statements by Port employees and statements found on the Port's website.  *Id.* at 774.  POHA argued that Perry had no property interest because the alleged "understandings" would be contrary to Texas law and therefore could not create a property interest under section 1983.  The Court agreed and denied Perry's claims.  *Id.*

---

[6]      A contract dispute, in and of itself, is not sufficient to give rise to a cause of action under section 1983.  *Braden v. Texas A & M Univ. Sys.,* 636 F.2d 90, 93 (5th Cir. 1981); *see also S & D Maint. Co. v. Goldin,* 844 F.2d 962, 967 (2nd Cir. 1988) (the court refused "to constitutionalize contractual interests that are not associated with any cognizable status of the claimant beyond its temporary role as a governmental contractor.").

13

In the case at bar, Plaintiff asserts a property interest under section 1983 that would be inconsistent with state law and POHA policy and therefore cannot create a property interest.  There are specific statutory requirements for issuing government contracts under which the Port operates.  *See, e.g.,* TEX. WATER CODE ANN. §§ 60.401-.414 (Vernon 2004).[7]  Bedford's argument ignores these requirements and established policies of POHA.  According to the Executive Director of POHA, contracts in excess of $25,000 are voted on in open meeting by the full commission.  Exhibit 6 (Kornegay) at 3.  Moreover, no single commissioner or staff person has authority to enter into a contract that could bind the Port for any amount in excess of $25,000.  *Id.*  Plaintiff's claims that he had "understandings" with POHA staff that rose to the level of binding contracts with POHA would be inconsistent with state law and the policies of POHA.  Therefore, Plaintiff's claim of a property interest based on a "mutually explicit understanding" must fail because they cannot support a viable protectible property interest under these circumstances, as a matter of law.

Even if Plaintiff's alleged "mutually explicit understanding" with POHA[8] could support a claim for deprivation of property without due process under the Fourteenth Amendment, Plaintiff's argument must fail because the parties never agreed on vital terms to support a binding agreement.  A contract implied in fact arises from the acts and conduct of the parties, "it being implied from the facts and circumstances that there was a mutual intention to contract."  *Haws & Garrett Gen.*

---

[7]  Section 60.408 provides, in part, as follows:
(a)      The bids shall be presented to the port commission in session.
…
(f)      The contract must be in writing, executed for the district or port authority by its executive or designated officer, and filed with the proper officer of the district or port authority.
(g)      Before a contract takes effect or is binding on a district or port authority, the appropriate financial officer of the district or port authority must certify that funds are or will be available to meet the contract when due.
…
(i)      A purchase or contract that is not in compliance with this subchapter is void and unenforceable.

[8]  Plaintiff's alleged agreement must have been with POHA because POHAIC was not established until January 2002, well after Plaintiff submitted his Proposal to POHA.

14

*Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972). In both implied and express contracts, there must be "the element of mutual agreement which, in the case of an implied contract, is inferred from the circumstances." *Id.* Even in an implied contract, however, there must be a meeting of the minds on the terms of the contract. *Angeles v. Brownsville Valley Reg'l Med. Ctr., Inc.,* 960 S.W.2d 854, 859 (Tex. App.—Corpus Christi 1997, pet. denied). "A contract is not enforceable unless the court can determine the parties' legal obligations and liabilities." *America's Favorite Chicken Co. v. Samaras*, 929 S.W.2d 617, 622 (Tex. App.—San Antonio 1996, writ denied). Additionally, to be enforceable, the parties must have agreed on the material terms. *Id.* "If an essential term is left open for future negotiation, the contract is not binding" and is merely an agreement to agree. *Id.* Whether an agreement is legally enforceable or binding is a question of law. *Id.*

In this case, according to Bedford, almost all of the material terms were left open to negotiation. Bedford, at most, had an alleged agreement to agree. Thus, his contract, expressed or implied, fails as a matter of law. Bedford's own testimony points out the fact that the parties never agreed to terms sufficient to form a contract

Q      (Ms. Egner)  What was the royalty?

A      The royalty was supposed to be discussed with

       regards to bringing in the program. I mean, the royalty was

       supported to be the reward for bringing in the program.

Q.     Okay. And how much was the royalty supposed to be?

A.     We never came to discuss that. I believe that was

       spoken about.

Q.     It was just going to be some amount to be decided

later?

A.     Negotiable or the market rate ongoing.

Exhibit 1 (Bedford) at 233.  As indicated above, Plaintiff admits that he does not know what he is entitled to in the alleged contract because there was no agreement and no meeting of the minds. Accordingly, there is no implied contract in which Bedford would have a property interest.

### 3.     Bedford Has Not Been Denied Due Process

Even if Bedford has a federally-protected property interest, he was not deprived of that right without due process of law.  The Supreme Court has recognized two distinct procedural due process claims.  The first is a challenge to established state procedures.  *Parratt v. Taylor*, 451 U.S. 527, 537-38 (1981).  The second involves acts by state officials that are not pursuant to established state procedures.  They are considered "random and unauthorized" acts.  *Id.* at 542.  In the second type of claim, there is no failure of due process unless the state fails to provide an adequate post-deprivation remedy.  *Id.* at 543-44.

Bedford has not challenged any established state procedure.  Instead, he alleged that Defendants "fraudulently induced" him into relinquishing his trade secret with various promises. Am. Complaint at 7.  There is no state practice or procedure that authorizes state officials to commit fraud.  Defendants' actions, as alleged by Bedford, were not consistent with the state's established procedure.  Therefore, Bedford's claim should be dismissed if a state remedy exists.

Texas provides adequate post-deprivation remedies for Bedford.  His pleadings demonstrate that Texas common law supplies several causes of action to remedy the alleged wrongful "taking" by Defendants.  *See Cathey v. Guenther*, 47 F.3d 162, 164 (5th Cir. 1995) (noting that plaintiff had plead several causes of action to remedy the alleged unlawful "taking"); *Hopkins v. Merrick*, No. 2:03-CV-0319, 2004 WL 42598, at *1 (N.D. Tex. Jan. 7, 2004) (not designated for publication)

16

(court dismissed plaintiff's complaint finding that the plaintiff's due process rights were not violated by a theft of property because common law torts provided adequate post-deprivation remedies under Texas law).  Since Bedford has adequate post-deprivation remedies in state court, his claim in federal court should be dismissed.

### 4.    As A Matter of Law, The Federal Claim Against The Individual Defendants Fail Because Defendants Have Immunity

Even if a civil rights action is found, the individual Defendants are protected by qualified immunity.  According to the Supreme Court, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is the result of balancing the competing interests of plaintiffs who have been wronged with the interests of public officials who have been wrongly sued.  The issue of qualified immunity turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law.  *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).  It was objectively reasonable for the individual Defendants to rely on established Texas law that provides that they did not have the authority to bind POHA. "When sued in his individual capacity, a governmental employee is entitled to a presumption of qualified immunity from suit."  *Mossey v. City of Galveston*, 94 F. Supp. 2d 793, 796 (S.D. Tex. 2000).

The test to determine whether a defendant is entitled to qualified immunity is as follows: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right, and (2) if so, whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident.  *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998).  When a plaintiff invokes a legally established right, the inquiry is whether the contours of

17

the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640.

Applying this test for qualified immunity, the question then becomes whether, at the time of the alleged deprivation, it was clearly established law (i) that the individual Defendants had the authority to bind POHA contractually; (ii) that Bedford could have a valid and enforceable contract absent compliance with applicable Texas statutes and POHA policies; (iii) that Bedford could have a reasonable expectation of financial gain without ever bringing any new business to POHA; (iv) that Bedford could have had a trade secret in a concept that POHA was already developing before Bedford ever met with officials at POHA; (v) that Bedford had a federally-protected property interest in a trade secret that he willingly shared with various individuals without requesting confidentiality; and (vi) that the communication that the individual Defendants had with Bedford rose to the level of an enforceable property interest.[9]   Based on an objective reasonableness standard, the individual Defendants could not have understood that they violated Bedford's rights.

### 5.   Plaintiff has No Claim for Breach of Implied Contract Against the Individual Defendants

#### a.   Horan and Rydlund Are Not Parties to the Alleged Contract Between the Port and Plaintiff

Plaintiff appears to contend either that he had a contract with Horan and Rydlund in their individual capacities or Plaintiff contends that the individual Defendants are personally liable for the dismissed breach of implied contract claim against POHA and POHAIC.[10]   Under either scenario, the individual Defendants have no such liability in their individual capacities and are entitled to summary judgment.

---

[9]   Plaintiff's difficulty in articulating his property interest in his Amended Complaint should be some evidence of whether Plaintiff has a clearly established constitutional right.

[10]   To the extent that Bedford is arguing that he had an implied contract with the POHA or POHAIC, those entities have been dismissed from this lawsuit with respect to the implied contract claim.

18

Plaintiff has not alleged that he had a separate contract with either Horan or Rydlund, individually. Plaintiff's Amended Complaint indicates that Horan and Rydlund "would compensate Plaintiff if they used the concept." Am. Complaint at 13. By any reasonable standard, this allegation indicates that Horan and Rydlund's employer would compensate Plaintiff. There has been no allegation that Horan and Rydlund intended to compensate Plaintiff with their own funds.

To the extent Plaintiff is asserting that Defendants are liable for the breach of a contract he had with their employers, such claim must fail as a matter of law. It is well settled under Texas law that "[u]nless the parties have agreed otherwise, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract." *A To Z Rental Ctr. v. Burris*, 714 S.W.2d 433, 435 (Tex.App.—Austin 1986, writ ref'd n.r.e.); *see also Burch v. Hancock*, 56 S.W.3d 257, 261 (Tex. App.—Tyler 2001, no pet.); RESTATEMENT (SECOND) OF AGENCY § 320 (1957).

In this case, Horan and Rydlund were undisputedly acting as agents for the Port and/or POHAIC and not acting in their individual capacities. Plaintiff was well aware of this fact. In his efforts to try and secure a written, formal, binding contract with POHA, Plaintiff referenced his attempts to work with Horan and Rydlund for "the Port board to give [him] a contract." Exhibit 1 (Bedford) at 189. Moreover, Bedford submitted to Lawal a draft fee proposal dated June 8, 2001. Exhibit 1 (Bedford) at 193, Depo. Ex. 6. Bedford named the client who would pay the fee as "Port of Houston" and named "Port of Houston Authority" as the signing entity. *Id.* Because Plaintiff never intended and, in fact, never had a contract with Defendants in their individual capacities, Defendants are entitled to judgment as a matter of law.

      b.    <u>The Individual Defendants Cannot Be Liable for An Implied Contract That Did Not Exist Because There Was No Agreement On Terms</u>

19

As discussed earlier, there was no agreement between Bedford and POHA or POHAIC regarding essential terms of any agreement between them. All of the terms were left open for future negotiation. Therefore, there could be no binding contract. The individual Defendants have no liability under Plaintiff's cause of action for implied contract. Summary judgment on this claim is appropriate.

      c.     <u>The Individual Defendants Cannot Be Liable for A Contract that Did Not Exist, As a Matter of Law</u>

To the extent Plaintiff claims that he had a contract for his "idea" for POHA to establish a consulting business, that claim also fails. For the submission of an idea to give rise to an implied contract, "two circumstances must have existed when the idea was disclosed: (1) the "idea purveyor" must have "clearly conditioned his offer to convey the idea upon an obligation to pay" for the use of that idea before it was disclosed, and (2) the offeree must have agreed to have the idea disclosed [to him] knowing of this condition." *Keane v. Fox Television Stations, Inc.*, 297 F. Supp. 2d 921, 941 (S.D. Tex. 2004), *aff'd*, 2005 WL 627973 (5th Cir. Tex. Mar. 17, 2005) (citing *Kleck v. Bausch & Lomb, Inc.*, 145 F. Supp. 2d 819, 824 (W.D. Tex. 2000)). "The law will not imply a promise to pay for an idea from the mere facts that the idea has been conveyed, is valuable, and has been used for profit; this is true even though the conveyance has been made with the hope or expectation that some obligation will ensue." *Kleck*, 145 F. Supp. 2d at 824.

In *Keane*, the plaintiff sent a descriptive "sales packet" to Fox Television, among others, describing his idea for a televised talent search. *Keane*, 297 F. Supp. 2d at 941-42. The plaintiff claimed that Fox Television entered into an implied contract with him by subsequently developing and producing "American Idol," which the plaintiff claims originated with his sales packet. *Id.* In dismissing the plaintiff's implied contract claim, Judge Lake noted that the plaintiff's cover letter

20

"neither offers an idea for sale nor conditions the disclosure of an idea on a promise that he be paid should the letter's recipient opt to use his idea at some point in the future." *Id.* at 942.

Like the plaintiff in *Keane*, Bedford did not condition the disclosure of his idea on a promise to pay.  Instead, Bedford voluntarily and gratuitously submitted his Proposal to the Port.  Exhibit 1 (Bedford) at 191.  Bedford's written Proposal contains no mention of any agreement with the Port of Houston to compensate Bedford in exchange for his Proposal or in the event of the use of his Proposal by the Port.  Bedford's Proposal makes no mention of any expectancy on his part that he would receive any such compensation for having provided the Proposal to the Port.  He closed the Proposal with the gratuitous statement that "JITSOG INTL. LTD [Plaintiff's company] is ready to assist the Port of Houston in their endeavors to seek trading partners in Africa ports when the opportunity arises."   This statement represents, at the most, nothing more than "the hope or expectation that some obligation will ensue," which is insufficient to create an implied contract. *Kleck*, 145 F. Supp. 2d at 824 (internal citation omitted); *Keane*, 297 F. Supp. 2d at 941-42. Bedford's Proposal is entirely devoid of a request for compensation in exchange for his idea, which conclusively negates a claim of implied contract and makes summary judgment on this claim proper.

6.   **There Are No Material Issues Of Fact Regarding Plaintiff's Misappropriation Of Trade Secret Claim**

To prove trade secret misappropriation under Texas law, a plaintiff must establish that: "(a) a trade secret existed; (b) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means; and (c) use of the trade secret without authorization from the plaintiff." *Phillips v. Frey*, 20 F.3d 623, 627 (5th Cir. 1994).  Plaintiff's claim for misappropriation of a trade secret fails as a matter of law because Plaintiff did not have a trade

21

secret, and Plaintiff's alleged trade secret, the Proposal, was not acquired through a breach of a confidential relationship or discovered by improper means.

a.    <u>The Proposal is Not a Trade Secret</u>

Texas courts have accepted that "[a] trade secret may consist of any formula, pattern, device or compilation of information which is *used in one's business*, and which gives [] an opportunity to obtain an advantage over competitors who do not know or use it." *Hyde Corp. v. Huffines*, 314 S.W.2d 763, 776 (Tex. 1958) (emphasis added); *see also* Court Order of March 31, 2005 at 23. Therefore, to constitute a trade secret, Plaintiff's proposal must be "used in [his] business" and give him an advantage over his competitors. However, Plaintiff readily admitted that he does not use the information contained in the Proposal in his own business and therefore, it does not give him an advantage over his competitors. Exhibit 1 (Bedford) at 93.[11]  Because he did not use the information contained in the Proposal in his own business, the Proposal does not meet the legal definition of a trade secret and Defendants are entitled to judgment as a matter of law.

Bedford's claim of misappropriation of trade secret also fails because the idea of developed ports consulting with developing ports was already known and being implemented around the world, and even at POHA, by the time Bedford presented his 2000 Proposal to POHA.  A trade secret must possess some "modicum of originality." *Cataphote Corp. v. Hudson*, 444 F.2d 1313, 1315 (5th Cir. 1971).  Information that is generally known and readily available is not protectable.

---

[11]

| | | |
|---|---|---|
| Q. | (BY MS. EGNER) Mr. Bedford, let me ask you this.  Do you use the information that's contained in Exhibit 3 [Plaintiff's proposal] in your own business? | |
| | MR. HANKINS: Objection, form. | |
| A. | I have never used this information in my own business. | |
| Q. | (BY MS. EGNER) So this information is not valuable to you in operating your business. | |
| | MR. HANKINS: Objection, form. | |
| A. | Not at all, ma'am.  I don't know what I'm going to do with it, ma'am. | |

Exhibit 1 (Bedford) at 93:17-94:2.

22

*Lawfinders Assocs., Inc. v. Legal Research Ctr., Inc.*, 65 F. Supp. 2d 414, 418 (N.D. Tex. 1998). *See also Metallurgical Indus. Inc. v. Fourtek, Inc.*, 790 F.2d 1195, 1199 (5th Cir. 1986) (citation omitted) ("Matters of general knowledge in an industry cannot be appropriated by one as his secret.").

There was no originality in Bedford's 2000 Proposal. Even the newspaper articles attached to his Proposal described POHA's interest in offering consulting services and the efforts that POHA was undertaking to pursue the idea. Further, other ports around the world and other ports in the United States were already providing consulting services before Bedford presented his Proposal. POHA was aware of the consulting services being provided by other ports. The idea of a developed port providing consulting services to developing ports was generally known and a matter of general knowledge in the port industry. Bedford cannot claim it as his trade secret.

### b.    Not Acquired Through A Breach or Improper Means

Moreover, even if the Proposal were somehow considered a trade secret, Plaintiff's cause of action must fail because there was no breach of a confidential relationship. A person may not create a confidential relationship with another through a "gratuitous and unilateral act." *Official Airlines Schedule Info. Serv. Inc. v. E. Air Lines, Inc.*, 333 F.2d 672, 674 (5th Cir. 1964); *see also Smith v. Snap-On Tools Corp.*, 833 F.2d 578, 579-80 (5th Cir. 1987) (quoting the RESTATEMENT OF TORTS § 757 cmt. j (1939)). In the *Keane* case, Judge Lake held that "[b]y gratuitously sending a packet of information to a company, hoping that the company might contribute financially to [the plaintiff's] desire to turn an idea into a production of some kind, [the plaintiff] extinguished any property right to a trade secret that he might have had." *Keane*, 297 F. Supp. 2d at 940 (dismissing a trade secret misappropriation claim in which the plaintiff claimed that Fox Television stole his idea for "American Idol" from his "descriptive sales packet"). Plaintiff admits that he voluntarily submitted the Proposal to Horan and Rydlund. Exhibit 1 (Bedford) at 91.    There was no mark of

23

confidentiality on the face or in the body of the Proposal. *Id.* at 102-03. Bedford had no written agreements with anyone about confidentiality. *Id.* at 374-375. Moreover, Plaintiff closed his Proposal with the gratuitous statement that "JITSOG Intl. Ltd. is ready to assist the Port of Houston in their endeavors to seek trading partners in Africa ports when the opportunity arises." Exhibit 5 (2000 Proposal) at 9. Thus, Bedford's own admissions prove that Defendants did not acquire the Proposal "through a breach of a confidential relationship."

Additionally, the Fifth Circuit has found that "it is not improper to obtain knowledge of a process where the holder of the alleged trade secret voluntarily discloses it or fails to take reasonable precautions to ensure its secrecy." *Phillips*, 20 F.3d at 630. It is true that a "holder may divulge his information to a *limited extent* without destroying its status as a trade secret." *Metallurgical Indus.*, 790 F.2d at 1200 (emphasis added). However, examples of this type of protected limited disclosure include "communicat[ing] it to employees involved in its use" and "communica[ting] it to others pledged to secrecy." *Id.* (quoting Restatement of Torts § 757 cmt. b (1939)). In this case, Bedford admits that he provided a copy of his Proposal to seventeen individuals. Exhibit 2 (Plaintiff's Interrogatory Answers) at 7-8.[12] Moreover, of the seventeen people who were provided a copy of the Proposal, ten of those individuals did not work for or have any relationship with the Port or POHAIC. Exhibit 1 (Bedford) at 112-14; 124-26. Thus, Bedford's disclosure was not "limited" as that term has been defined in this circuit.

Bedford had no written confidentiality agreements with anyone to whom he gave his Proposal. *Id.* at 374-75. Bedford also admits that, with respect to at least twelve of the individuals to whom he disclosed his Proposal, he did not request that they keep the Proposal secret and no one

---

[12]    In his interrogatory responses, Bedford lists fourteen individuals who received the Proposal. Exhibit 2 (Plaintiff's Interrogatory Answers) at 8. However, after reading the responses, it is apparent that Bedford actually sent his Proposal to seventeen individuals. *Id.* That is, Bedford does not include in his count Mayor Lee Brown, Saba Abashawl, or Kimberly Nichols; however, it is clear from his interrogatory responses that these individuals received a copy of his Proposal. *Id.*

agreed to keep it secret. *Id.* at 348 (Chyrise Wilson); 349 (Mayor Lee Brown); 349-350 (Shah Haaqi); 355-356, 359 (Saba Abashawl and Jim Fonteno); 368, 370 (Jew Don Boney via Kimberly Nichols); 386 (Jim Edmond); 397-398 (Amos Brown); 406 (Chris Wilmot); 408 (Kwabena Darko); 411 (Ben Mensah). Bedford even sent his Proposal to two individuals related to the Port of Ghana in Africa. *Id.* at 124; Exhibit 2 (Plaintiff's Interrogatory Answers) at 7-8. In fact, on at least one occasion, Bedford asked a City Hall employee to use her "good offices to influence this program on *any platform [she] might find [herself] during the course of [her] business.*" Exhibit 1 (Bedford) at 121-22, Depo. Ex. 4. This widespread dissemination of his idea, without the condition of secrecy, belies Bedford's claim that he has a protectable trade secret in his Proposal. For all of these reasons, Bedford's trade secret misappropriation claim fails as a matter of law and Horan and Rydlund are entitled to summary judgment.

**7.    The Individual Defendants Are Entitled to Summary Judgment on Plaintiff's Claims of Theft of Property/Theft of Services/Theft of Trade Secret**

The Texas Theft Liability Act ("TLA") creates civil liability for theft of property, including trade secrets, and services by and through the Texas Penal Code. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 134.001-134.005 (Vernon 1997).[13] Bedford argues that Horan and Rydlund violated the TLA by appropriating his "idea," "intellectual property," and "Proposal." Thus, with regard to his theft of property and theft of trade secret claim, Bedford's allegations are identical; that is, he alleges that they stole his "Proposal," which embodies his "intellectual property." With respect to his theft of services claim, Bedford claims that he provided Horan and Rydlund with the "Proposal" and also with advice to test the viability of the project without receiving compensation. Both of these claims fail as a matter of law.

---

[13]    Although Plaintiff has not specifically plead violation of this statute, the statute encompasses the separate causes of action that Plaintiff asserts.

a.     Theft of Property/Trade Secret

The TLA defines "theft" as "unlawfully appropriating property . . . as described" by various sections of the Penal Code.  *Id.* at § 134.002(2).  Because Bedford has alleged theft of his intellectual property, the TLA must be viewed in light of the Penal Code section prohibiting theft of trade secrets.  The Penal Code provides that "[a] person commits an offense if, without the owner's effective consent, he knowingly: (1) steals a trade secret; (2) makes a copy of an article representing a trade secret; or (3) communicates or transmits a trade secret."  TEX. PEN. CODE ANN. § 31.05(b) (Vernon 2003).

The Penal Code defines a trade secret as the "whole or any part of any *scientific or technical* information, design, process, procedure, formula, or improvement that has value *and that the owner has taken measures to prevent from becoming available to persons other than those selected by the owner to have access for limited purposes."  Id.* at § 31.05(a)(4) (emphasis added).  Plaintiff cannot meet the definition of trade secret because:  1) the information in his 2000 Proposal was not scientific or technical information; 2) the information in his 2000 Proposal did not have value; and 3) Bedford did not take measures to protect the information and prevent its disclosure.

To be a protected trade secret under the Penal Code, "the article in question must . . . be all or part of scientific or technical information."  *McGowan v. State*, 938 S.W.2d 732, 738 (Tex. App.—Houston [14th Dist.] 1996), *aff'd sub nom. Weightman v. State*, 975 S.W.2d 621 (Tex. Crim. App. 1998) 975 S.W.2d 621 (Tex. Crim. App. 1998).  No case applying this section has done so outside of the scientific or technical realm.  *See id.* (dealing with drawings of highly technical machinery parts); *Weightman*, 975 S.W.2d at 623 (same); *Leonard v. State*, 767 S.W.2d 171, 174-75 (Tex. App.—Dallas 1988), *aff'd sub nom. Schalk v. State*, 823 S.W.2d 633, 635 (Tex. Crim. App. 1991) (en banc) (dealing with proprietary computer programs); *Atkins v. State*, 667 S.W.2d 540, 541-42 (Tex. App.—Dallas 1983, no writ (dealing with architectural plans).  Bedford's

26

HOU 2426813.1

Proposal suggested that POHA create an international bureau to aid in the development of international ports and in no way contains "scientific or technical" information.[14]   Because Bedford's Proposal does not satisfy the statutory definition of a "trade secret," his claim for theft of property/trade secret under the TLA must fail.

Bedford's claim also fails because the concept contained in the Proposal provided nothing of "value" as required by the statute.   Bedford admitted that the information in his Proposal was not valuable to him in operating his business.   Exhibit 1 (Bedford) at 93-94.   Further, the information contained in Bedford's 2000 Proposal was not of value to POHA because it was already headed down the path of establishing a consulting business long before anyone at POHA met Bedford.   *See* Exhibit 6 (Kornegay) at 2; Exhibit 3 (Horan) at 53-55.

Additionally, even if Bedford's Proposal qualified as a "trade secret" under section 31.05, his claim would fail because his Proposal was not kept confidential.   The "core element of a trade secret is that it must remain a secret, although absolute secrecy is not required."   *McGowan*, 938 S.W.2d at 737.   However, "[t]here must be a substantial element of secrecy and the owner must have taken measures to prevent the trade secret from becoming available to persons other than those selected by the owner to have access for limited purposes."   *Id.* (citing *Schalk*, 823 S.W.2d at 638, 640).

In *McGowan*, the plaintiff was convicted of theft of trade secrets for transmitting drawings of highly technical machinery parts to another individual.   *Id.* at 734.   In deciding whether measures were taken to maintain substantial secrecy of the drawings, the court considered the following

---

[14]   This distinction is best highlighted by comparing the Penal Code's definition of trade secret with that of the Uniform Trade Secret Act, which defines a trade secret as "information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, *or any business information or plans*, financial information, or listing of names, addresses, or telephone numbers." *See Hoffmann-La Roche Inc. v. Yoder*, 950 F. Supp. 1348, 1356 (S.D. Ohio 1997) (quoting the Uniform Trade Secrets Act) (emphasis added).   The inclusion of "business information or plans" is conspicuously absent from the Texas Penal Code definition.

factors: "(1) non-disclosure agreements, (2) plant security, (3) access to information, and (4) other measures." *Id.* at 737. In this case, as already shown, Bedford did not maintain the secrecy of his Proposal. Specifically, Bedford admits that he never asked Lawal to maintain his Proposal in confidence. Moreover, he distributed his Proposal to seventeen people, the vast majority of whom were not affiliated with POHA and were not asked to keep the Proposal confidential. Additionally, Bedford even requested that one City Hall employee use her "good offices to influence this program on *any platform [she] might find [herself] during the course of [her] business.*" Exhibit 1 (Bedford) at 193, Depo. Ex. 4 (emphasis added). Because Bedford did not take measures to ensure the substantial secrecy of his Proposal, his Proposal does not satisfy the statutory definition of a "trade secret" and his claim for theft of property/trade secret under the TLA fails.

Again, even if the information in Bedford's 2000 Proposal qualified as a trade secret according to the Penal Code definition, Plaintiff has no evidence that the information was ever communicated or transmitted by Horan or Rydlund as required. Although Bedford provided his 2000 Proposal to both Horan and Rydlund, only Rydlund reviewed it. Exhibit 3 (Horan) at 26. Rydlund reviewed the document and understood that Bedford wanted to do business with the Port of Houston by using his contacts in Africa to increase cargo through the Port of Houston or by bringing developing ports to the Port of Houston for consulting work. Exhibit 4 (Rydlund) at 128, 162-63, 166-67. Rydlund never understood that Bedford was bringing the theory of port development for a fee to POHA. *Id.* at 162, 166-67. Rydlund could not share or transmit that which he did not know. Therefore, the final element of section 31.05(b) cannot be met. Bedford's theft of property/trade secret claim fails as a matter of law.

b.   Theft of Services

Bedford argues that Horan and Rydlund "took Plaintiff's services without compensation." Amended Petition at ¶ 10. The Texas Penal Code provides that "[a] person commits theft of service

28

if, with intent to avoid payment for service that he knows is provided only for compensation:  (1) he intentionally or knowingly secures performance of the service by deception, threat, or false token. TEX. PEN. CODE ANN. § 31.04.  A "service" includes "labor and professional service" but does not include ideas, proposals, concepts or tangible objects. TEX. PEN. CODE ANN. § 31.01(6).  Plaintiff's claim for theft of services must fail because Plaintiff cannot produce any evidence indicating that Defendants had the requisite intent or that Defendants knew that such services were provided for compensation.

By definition, Plaintiff's theft of service claim must be premised on his rendition of professional services, not on his the ideas contained in his proposal.  Plaintiff, however, repeatedly testified that the compensation allegedly due him stemmed from the ideas contained in the Proposal, not from any services he was performing on behalf of the Port.  *See* Exhibit 1 (Bedford) at 177, 179, 181, 183, 228-34.  Plaintiff has not testified and cannot provide any evidence that he provided any services to the Port for which he expected compensation nor can he produce any evidence that the Port knew that Plaintiff was providing services with the expectation of compensation.

Moreover, section 31.04 of the Penal Code contemplates liability for individuals who have failed to compensate a service provider once the service has been completed.  *See* TEX. PEN. CODE ANN. § 31.04.  However, in his discussions with Horan and Rydlund, Bedford was negotiating for a contract in the future to compensate him for services that had *yet to be rendered*.  Plaintiff testified that, *in the future*, he was to be paid an hourly wage in return for his consulting services.  *Id*. Plaintiff's testimony is a tacit admission that he did not expect to receive any compensation for services rendered, if any, until such time as secured a binding contract with the Port.  However, such a contract was never executed.  As discussed earlier, Bedford admits that at most there were discussions about items that could be negotiated in the future.  By Plaintiff's own admissions, he

did not provide Horan and Rydlund with any services in which they agreed to compensate Bedford. Instead, Bedford was attempting to negotiate a contract for services to be performed in the future. Defendants, therefore, are entitled to judgment as a matter of law.

In order to maintain a claim for theft of services, Plaintiff must prove that Defendants intended to avoid payment. TEX. PEN. CODE ANN. § 31.04.  As discussed above, Defendants were unaware that Plaintiff expected to be compensated for rendering services on the Port's behalf. Without such an understanding, Defendants could not have intended to avoid providing such compensation.  Therefore, Plaintiff is unable to produce any evidence that secured any services of Plaintiff while at the same time intending to avoid payment and Defendants are entitled to judgment as a matter of law.

### 8.    The Individual Defendants Are Entitled to Summary Judgment on Plaintiff's Negligent Misrepresentation Claim as A Matter of Law

To prove a claim of negligent misrepresentation, the plaintiff must show "(1) a representation made by the defendant in course of the defendant's business, or in a transaction in which the defendant has a proprietary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the opinion; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 763 (5th Cir. 2002).  Bedford's claim fails because there were no actionable representations, the individual defendants had no proprietary interest in the communications at issue, and Bedford could not have justifiably relied on any statements they made as a matter of law and fact.

The tort of negligent misrepresentation requires the false information to be a misstatement of *existing fact*, not a promise of future conduct. *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).  In this case, the only alleged misrepresentations

30

concern Bedford's future employment prospects and/or the compensation he was to receive after future negotiations. Specifically, Bedford alleges that he provided his proposal in exchange for a marketing consultant position, royalties and consultant's fee "after its been tested [proved] to be correct." Exhibit 1 (Bedford) at 79. When pressed on the terms of the alleged contract, he admitted that they were going to be negotiated later. *Id.* at 233. Such statements of future conduct cannot form the basis of a negligent misrepresentation claim, as a matter of law.

Plaintiff's claim also fails because Horan and Rydlund, in their individual capacity, had no proprietary interest in Bedford's 2000 Proposal. Even their employer, POHA, had no proprietary interest in Bedford's 2000 Proposal. To the extent Bedford claims that he brought the previously unknown theory for a developed port to consult with developing ports, that idea was already in the public domain with several ports around the world and others in the United States providing such services. POHA's only proprietary interest in Bedford was the potential opportunity that, through his contacts, he would increase the cargo through the Port or that, through his contacts, he would bring ports with which POHA could consult. Neither happened. Horan and Rydlund, as individuals, had no propriety interest.

Additionally, as a matter of law and fact, Bedford could not have justifiably relied on any statements made by Horan or Rydlund. According to Texas law, "[p]ersons or entities contracting with the governmental unit are charged by law with notice of the limits of their authority and are bound at their peril to ascertain if the contemplated contract is properly authorized." *City of Bonham v. Southwest Sanitation, Inc.*, 871 S.W.2d 765, 767 (Tex. App.—Texarkana 1994, writ denied); *State v. Ragland Clinic-Hosp.*, 159 S.W.2d 105, 107 (Tex. 1942). S*ee also Richmond Printing v. Port of Houston Auth.*, 996 S.W.2d 220, 224 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (holding that party attempting to contract with the POHA had the duty to verify that statutory

31

prerequisites to contract formation were met).  State law is clear that Defendants, even in their official capacity, did not have the authority to contract with Bedford on behalf of POHA.  *See* TEX. WATER CODE ANN. §§ 60.401-60.414 (Vernon 2004).  Plaintiff's claim must fail.

Further, Plaintiff's allegation of reliance must fail because the summary judgment evidence establishes that Bedford did not rely on statements made by Horan and Rydlund.  Bedford knew that he did not have a contract based on any statements made by Horan and Rydlund.  In fact, he has testified that as of June 2001, he did not have a contract.  Exhibit 1 (Bedford) at 205.  Because he did not have any enforceable agreement with POHA, Bedford approached Commissioner Lawal and, in fact, submitted the Draft Agreement to him.  Exhibit 1 (Bedford) at 193-198, Depo Ex. 6.  If Bedford were, in fact, relying on Horan and Rydlund for an alleged representation, he would not have felt it necessary to approach a port commissioner with a proposed contract.[15]  Therefore, there was no reliance and Plaintiff's claim for negligent misrepresentation must fail.

### 9.  The Individual Defendants Are Entitled to Summary Judgment on Plaintiff's Fraud Claim as A Matter of Law

To establish a claim for fraud, a Plaintiff must prove "(1) a material representation was made; (2) it was false when made; (3) the speaker either knew it was false, or made it without knowledge of its truth; (4) the speaker made it with the intent that it should be acted upon; (5) the party acted in reliance; and (6) the party was injured as a result."  *Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 858 (5th Cir. 2004).  As discussed earlier, even if Plaintiff could point to material misrepresentations, Plaintiff's claim for reliance fails as a matter of law and fact. "[A] fraud plaintiff cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation."  *Lewis v. Bank of Am. NA*, 343 F.3d 540, 546-47 (5th Cir. 2003).  (internal citation

---

[15]     As discussed earlier, a single port commissioner does not have the authority to bind POHA either.

32

omitted).  For all of these reasons, Bedford's fraud claim fails and Horan and Rydlund are entitled to summary judgment.

### G.    Conclusion

WHEREFORE, Defendants Port of Houston Authority, Port of Houston Authority International Corporation, John Horan, and John Rydlund respectfully request that their Motion for Summary Judgment be granted, and for such other and further relief to which they may show themselves entitled.

Respectfully submitted,

By: _____

GENE L. LOCKE
Texas State Bar No. 12461900
600 Travis, Suite 4200
Houston, Texas 77002
Telephone:  (713) 220-4200
Facsimile:  (713) 238-4285

OF COUNSEL:
SYLVIA MATTHEWS EGNER
Texas State Bar No. 13226900
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, Texas 77002
Telephone:  (713) 220-4717
Facsimile:  (713) 238-7369

ATTORNEY IN CHARGE FOR
DEFENDANTS PORT OF HOUSTON
AUTHORITY, PORT OF HOUSTON
AUTHORITY INTERNATIONAL CORPORATION,
JOHN RYDLUND, AND JOHN HORAN

and

David H. Brown
VINSON & ELKINS, LLP
2300 First City Tower
1001 Fannin
Houston, Texas 77002
Telephone:  (713) 758-2222
Facsimile:  (713) 615-5308

ATTORNEYS FOR PORT
OF HOUSTON AUTHORITY

33

HOU 2426813.1

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served on the following counsel of record as listed on April 19, 2005.

Grover G. Hankins                                *CRRR* **7160 3901 9848 9220 6034**
THE HANKINS LAW FIRM
616 W. Main St.
League City, Texas 77573

Dwight E. Jefferson                              *Via Regular Mail*
DWIGHT E. JEFFERSON,
   ATTORNEY AT LAW, PLLC
12 Greenway Plaza, Suite 1550
Houston, Texas 77046

Grant Cook                                       *Via Regular Mail*
THOMPSON & KNIGHT LLP
Three Allen Center
333 Clay Street, Suite 2300
Houston, Texas 77002-4499

David H. Brown                                   *Via Regular Mail*
VINSON & ELKINS, LLP
2300 First City Tower
1001 Fannin
Houston, Texas 77002

Sylvia Matthews Egner

34